IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TUYET LONGORIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-0604-N |
| | § | |
| MICHAEL CHERTOFF, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court are Defendants US Investigation Services, Inc. ("USIS") and Michael Chertoff's ("Chertoff") (collectively, "Defendants") Motions for Summary Judgment [22, 26]. Because the Court finds that Plaintiff Tuyet Longoria ("Longoria") has failed to provide probative evidence that USIS's reason for her discharge was pretextual, the Court grants both motions for summary judgment.

**I. LONGORIA'S EMPLOYMENT WITH USIS**

USIS provides Equal Employment Opportunity ("EEO") counseling services to the Department of Homeland Security ("DHS") pursuant to a contract that USIS obtained in August 2001. Under this contract, USIS has provided EEO counseling services at several DHS EEO offices around the country, including the Dallas location.

USIS hired Longoria, an Asian female, in August 2001 as an EEO counselor for the DHS EEO office in Dallas. Initially, Longoria received significant praise for her

performance. In fact, the then-acting USIS Program Manager, Chuck Howe, designated Longoria as the lead for the Dallas office, a position she held until 2004.

In April 2003, Lesley Jones replace Chuck Howe as the Program Manager who oversaw the EEO contract with USIS. Initially, Jones continued to provide positive feedback to Longoria regarding her performance. However, in February 2004, DHS EEO managers Katie Arnette and Jennifer West informed Jones that they had concerns regarding Longoria's conduct and performance. Specifically, Arnette and West reported that Longoria spread rumors about the stability of the EEO contract between DHS and USIS, creating unrest in the office. Arnette and West also expressed concern about the length of time Longoria took to complete her EEO assignments. Following her conversation with Arnette and West, Jones interviewed several other USIS employees in the Dallas office to verify the complaints lodged against Longoria. These interviews confirmed Arnette and West's complaints.

As a result of the complaints she received from Arnette and West, Jones removed Longoria from the lead designation and issued her a first-step counseling to address the conduct and performance issues. Longoria appealed this disciplinary counseling and a revised first-step counseling, in which Jones removed the language pertaining to Longoria's allegedly slow performance, was issued to her in April 2004.

Additionally, upon receiving the disciplinary counseling, Longoria filed a formal EEO complaint against Arnette and West, alleging that they discriminated against her on the basis of her race and national origin. USIS hired an independent firm to conduct an investigation

into Longoria's complaints. This investigation revealed that the evidence did not support Longoria's claims of discrimination.

In June 2004, USIS appointed Tony Abrams to succeed Lesley Jones as the Program Manager for the EEO contract. A few months later, in November 2004, DHS informed Abrams that a force reduction was necessary due to budget constraints; therefore, USIS needed to determine which employees would be laid off. USIS made these staff reductions based upon the employees' seniority or hire date with USIS. USIS did not terminate Longoria's employment at this time.

Following the November 2004 staff reduction, three USIS employees remained in the Dallas DHS EEO office: Longoria, Ruthia Jackson, and Debra Newman. In March 2005, DHS notified Abrams that a second staff reduction was required. USIS again made the lay off decisions based on the employees' seniority. As part of this second staff reduction, USIS laid off Debra Newman, who had the least USIS seniority among the three remaining employees, and Longoria, who had the same USIS hire date as Ruthia Jackson. USIS states that it selected Longoria for termination because she had a disciplinary counseling in her record, whereas Jackson did not. USIS terminated Jackson in a subsequent staff reduction in May 2006.

Following her termination, Longoria filed suit in this Court, alleging that USIS and DHS terminated her employment because of her race and in retaliation for filing the EEOC charge against DHS.[1]  USIS and DHS now move for summary judgment on these claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson*, 477 U.S. at 248.  A dispute over a material fact is genuine if, based on the evidence, a reasonable jury could return a verdict for either party.  *Id.* at 252.  In ruling on a motion for summary judgment, the Court must accept the nonmoving party's evidence and draw all justifiable inferences in its favor.  *Id.* at 255.

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.  The moving party may meet this burden by either (1) presenting evidence that affirmatively demonstrates the absence of any genuine issue of material fact, or (2) after adequate time for discovery, demonstrating that "the nonmoving

---

[1] Initially, Longoria asserted discrimination claims relating to a host of other actions on behalf of USIS, including the removal of Longoria from the "lead" designation, the issuance of the disciplinary counseling, the limited increase in her compensation, and the creation of a hostile work environment.  Longoria has since abandoned these additional claims.  Therefore, the Court will only address the claims Longoria raises based on her termination.

party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party cannot defeat summary judgment by resting upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue of fact. *Id.* at 324.

### III. LONGORIA FAILS TO RAISE A FACT ISSUE ON PRETEXT FOR HER RACE DISCRIMINATION AND RETALIATION CLAIMS

#### *A. Longoria's Burden of Proof Under* McDonnell Douglas

The burden-shifting analysis presented in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to Title VII race discrimination and retaliation claims where, as here, the plaintiff provides only circumstantial evidence to support her claims. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). Under this analysis, Longoria must first establish a prima facie case, which gives rise to the presumption that the Defendants acted with discriminatory or retaliatory intent. *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07. If the plaintiff presents a prima facie case, the burden of production then shifts to the defendants to articulate a legitimate nondiscriminatory, nonretaliatory reason for the underlying action. *Id.* Once Defendants produce such a legitimate rationale, the presumption raised by the prima facie case disappears completely, and the only relevant question is whether the Defendants intentionally discriminated or retaliated against Longoria. *Id.* at 510–11. At this point, the burden again rests with Longoria to produce sufficient evidence to create a genuine issue of

ORDER – PAGE 5

fact that either: (1) the Defendants' proffered reason for the employment action is not true, but is instead a pretext for discrimination or retaliation, or (2) the Defendants' reason, though true, is only one of the reasons for its conduct and that another "motivating factor" was Longoria's race or protected activity. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

### B. Defendants Provide a Legitimate Nondiscriminatory Rationale for Longoria's Termination

Longoria alleges that Defendants terminated her rather than Jackson because of her race and in retaliation for filing an EEOC charge against DHS. Defendants move for summary judgment on Longoria's claims on the grounds that, even assuming Longoria can establish a prima facie case of discrimination and retaliation, she has failed to raise a genuine issue of material fact as to whether USIS's proffered reason for the timing of her termination is pretextual.[2] The Court agrees.

Defendants contend that budget constraints necessitated three staff reductions in the Dallas DHS EEO office – one in November 2004, another in April 2005, and the last in May 2006. Defendants further claim that USIS terminated Longoria as part of the April 2005 staff reduction, rather than terminating Jackson, because Longoria had a disciplinary counseling in her file, whereas Jackson did not. This is a legitimate nondiscriminatory, nonretaliatory

---

[2] USIS also moves for summary judgment on the grounds that Longoria's Title VII claims are time-barred because she did not file a timely charge of discrimination with the EEOC. Additionally, Chertoff moves for summary judgment on the grounds that Longoria cannot establish that DHS was her "joint employer." However, because the Court can decide the motions for summary judgment on other grounds, the Court will not address these two arguments.

reason for Longoria's termination.  Therefore, in order to survive summary judgment, Longoria must offer probative evidence that this explanation is either pretext for discrimination and/or retaliation or that, even if true, another motivating factor for the timing of her termination was her race or protected activity.  Longoria, however, has failed to offer sufficient evidence of pretext or unlawful motive; her subjective belief that the Defendants' proffered reason is pretext is insufficient to survive judgment.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.").

   Longoria claims that up until she received the first-step counseling as a result of Arnette and West's complaints to Jones, she had received nothing but praise for her work.  In fact, in October 2003, just four months before Arnette and West complained to Jones, Longoria received a highly positive performance review.  Longoria argues that her good performance history indicates that Arnette and West's complaints, which prompted the disciplinary counseling, were unfounded; therefore, according to Longoria, USIS's stated reliance on the disciplinary counseling as the reason for her termination must be pretext for discrimination and retaliation.

   Longoria's argument is unpersuasive.  In order to raise a fact issue on pretext, Longoria must offer evidence that to show that the Defendants' proffered reason for Longoria's termination – that she did have a disciplinary record, whereas Jackson did not –

is false. Evidence of Longoria's strong performance prior to the first-step counseling does not raise such an issue. Longoria does not dispute that she did, in fact, receive the first-step disciplinary counseling and that this counseling preceded her termination. Nor does she dispute that Jackson did not have a disciplinary counseling in her record. The evidence offered by Longoria regarding her performance history does not put either of these two facts in doubt. At most, Longoria's positive performance history renders suspect the basis for the disciplinary counseling; however, the circumstances surrounding the issuance of the disciplinary counseling are not relevant to determining whether USIS lawfully terminated Longoria. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162, 2169-70 (2007) (explaining that a plaintiff may not use the intent associated with a prior discriminatory act that is not before the court to show discriminatory motive with respect to a later, facially neutral act). The legality of issuing the disciplinary counseling and of terminating Longoria are two separate and distinct issues; the lawfulness of the former, or unlawfulness as the case may be, does not bear on the latter. *See id.* at 2169 ("A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination.").

Longoria also contends that the credibility of the Defendants' proffered reason for her termination is doubtful in light of Jackson's spotty performance. As evidence of pretext, Longoria offers the deposition testimony of Jennifer West, in which West claimed that DHS had "some issues" with regard to Jackson's performance. Longoria argues that since she and Jackson both had performance issues and there was disparate treatment of the two, i.e.,

Longoria was laid off and Jackson was not, the disparate treatment shows Defendants' proffered reason was a pretext. This argument also fails. The Fifth Circuit has held that a plaintiff may show pretext through comparative evidence only when she can establish that her conduct was "nearly identical" to that engaged in by an employee who did not suffer an adverse employment action. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) ("[I]n order for a plaintiff to show disparate treatment, she must demonstrate that the misconduct for which she was discharged was nearly identical to that engaged in by an employee not within her protected class whom the company retained." (internal quotations omitted)). West's vague reference to having "some issues" with Jackson's performance does not establish the identity of circumstances necessary for Longoria to prove intent through comparative evidence.

Finally, Longoria argues that Defendants' proffered rationale for her termination is questionable because Defendants have failed to produce any evidence establishing that budget constraints "really forced" staff reductions, "rather than the [staff reductions] being a discretionary response" to a situation that Defendants could have responded to differently. Pl.'s Resp. to Defs.' Mots. for Summ. J., at 31. However, regardless of whether the Defendants' could have addressed budget constraints in a different manner, the decision to cut costs through multiple staff reductions is within the sound business judgment of the Defendants. It is not the Court's place to second-guess this decision. *See Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997) ("[D]iscrimination laws [are not] vehicles for judicial second guessing of business decisions."). Defendants have propounded evidence

reflecting that budget concerns motivated the staff reductions; this is sufficient to satisfy the Defendants' burden under *McDonnell Douglas*. *See St. Mary's Honor Ctr.*, 509 U.S. at 507 ("[A]lthought the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." (internal quotations omitted) (emphasis in original)); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The defendant need not persuade the court that it was actually motivated by the proffered reasons.").

Accordingly, the Court concludes that Longoria has failed to raise a genuine issue of material fact as to whether the Defendants' proffered reason for her discharge was pretext. The Court therefore grants the Defendants' motions for summary judgment.

Signed August 16, 2007.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 10